# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

RICHARD E. DENSMORE, )
                              )
       Plaintiff, )
                              )
    v. ) Case No. CIV-15-45-SPS
                              )
CAROLYN W. COLVIN, )
Acting Commissioner of the Social )
Security Administration, )
                              )
       Defendant. )

## OPINION AND ORDER

The claimant Richard Eugene Densmore requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born March 18, 1952, and was sixty-two years old at the time of the administrative hearing (Tr. 31, 152). He completed the twelfth grade, and has worked as a heavy equipment operator, truck driver, and dump-truck driver (Tr. 21, 192). The claimant alleges inability to work since August 1, 2012 due to asthma, emphysema, and stiff thumbs (Tr. 191).

### Procedural History

On February 7, 2013, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and on January 10, 2014, he applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ James Bentley conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated November 26, 2014 (Tr. 11-25). The Appeals Council denied review, so the ALJ's opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform less than the full range of medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), *i. e.*, he could lift/carry fifty pounds occasionally and twenty-five pounds frequently, stand and/or

walk about six hours in an eight-hour workday, and sit for six hours in an eight-hour workday, but that he must avoid concentrated exposure to dust, fumes, odors, and poorly ventilated areas (Tr. 15). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *i. e.*, hand packer and dining room attendant (Tr. 21-22).

### Review

The claimant's sole contention of error is that the ALJ failed to demonstrate that the claimant retained the ability to perform medium work. The Court finds this contention unpersuasive for the following reasons.

The ALJ determined that the claimant had the severe impairments of COPD, as well as the nonsevere impairments of obesity and arthralgia (Tr. 13). The claimant alleged an onset date of August 1, 2012, but the medical evidence in the record begins on January 15, 2013, when the claimant established care at Stigler Health & Wellness Center for his COPD (Tr. 273-276). Upon examination, the claimant had abnormal breath sounds/voice sounds, a decrease in breath sounds was heard, but the examiner did not hear wheezing, rhonchi, or rales/crackles (Tr. 275). He was prescribed medications and told to get thirty to sixty minutes of exercise daily to increase his heart rate (Tr. 276). The following month, the same results and recommendations occurred on lung examination (Tr. 270-272). In July 2013, the claimant had abnormal breath sounds/voice sounds, as well as wheezing, and also reported left-sided pain including elevation of the shoulder and in the wrist and knee (Tr. 327). Five days later, however, the claimant had normal breath sounds/voice sounds and no wheezing, rhonchi, or rales/crackles (Tr. 331).

The record reflects that the claimant continued to receive periodic treatment, largely consisting of medication management, from this clinic as well as Mercy Health Clinic (Tr. 336-353).

On May 3, 2013, the claimant was sent for a consultative examination with comprehensive pulmonary function test. Upon examination, Dr. Adel Malati noted the claimant had decreased breath sounds bilaterally, and assessed the claimant with COPD, hypercholesterolemia, and erectile dysfunction (Tr. 307-308). He also noted that the claimant had a "nice, normal, steady gait," could "sit, stand, and lie down without difficulty," and had a full range of motion (Tr. 308). The pulmonary function test revealed a best forced vital capacity (FVC) of 4.99, which was 106% of predicted value and a decrease of 16% after the bronchodilator; a best forced expiratory volume (FEV1) of 2.13, which was 60% of the predicted value and a decrease of 1% after the bronchodilator; and a best peak expiratory flow (PEF) of 198.6, which was 36% of the predicted value and represented a 48% increase after the bronchodilator (Tr. 303). Each of these test results had indicators that all or some portion of the results were below the lower limits of normal or a significant post change (Tr. 303).

On July 30, 2013, the claimant's representative obtained an opinion from Dr. Tracy Baker that the claimant would probably miss work due to his impairments and/or treatment about one day per month (Tr. 322). Dr. Baker cited the claimant's dyspnea, knee pain, and COPD as contributing factors to the claimant's absence (Tr. 322).

On November 24, 2014, Dr. Rebecca Burton of Bennington Chiropractic Clinic, wrote a letter stating that pulmonary function test results from August 27, 2014 indicated

the claimant did not meet the requirement of an FEV1 greater than 65%, and that although there was improvement it was still too low (Tr. 354). Accordingly, she stated that the claimant was no longer legal as a commercial driver (Tr. 354).

On May 22, 2013, a state reviewing physician found that the claimant could perform medium work, but must avoid concentrated exposure to extreme cold and fumes, odors, dusts, gases, poor ventilation, etc. (Tr. 62-64). This was affirmed upon review on August 30, 2013, with the exception of the need to avoid concentrated exposure to extreme cold (Tr. 76). Both noted that the pulmonary function studies revealed that, given the claimant's height, his COPD was not at the level of a listing (Tr. 65, 77).

In his written opinion, the ALJ thoroughly summarized the claimant's testimony as well as the medical evidence. As relevant to this appeal, the ALJ noted the claimant's treatment records from the clinic, as well as Dr. Malati's exam and the pulmonary function study, noting there was a 16% change after the bronchodilator for the FVC and a 1% change after the bronchodilator for the FEV1 results (Tr. 17-18). He further noted Dr. Baker's statement regarding the claimant missing work one day per month, but noted that, although on staff at the Health and Wellness Center, Dr. Baker only examined the claimant that day and on that visit the claimant was within normal limits overall, including normal breath and voice sounds (Tr. 19). The ALJ thus gave it little weight and continued, noting that the record reflected no acute exacerbations of the claimant's COPD, and that the claimant reported smoking meat for up to four hours a day five days a week and that even if he *did* give credence to this opinion, missing one day per month would not preclude work according to the vocational expert (Tr. 19). The ALJ then gave

"significant, not great weigh[t]," to the May 2013 state reviewing physician opinion, noting that there was no indication in the record the claimant needed to avoid extreme cold (Tr. 19). The ALJ determined that the claimant was not credible for a number of reasons (Tr. 20-21), then concluded that he was not disabled (Tr. 21-23).

The claimant contends that he does not retain the ability to perform medium work. As part of this contention, the claimant argues that the ALJ failed to acknowledge that the 16% and 1% changes in the pulmonary function studies were negative, rather than positive changes, and further that the record does not demonstrate an explanation for what the pulmonary function study actually demonstrates. He argues that the pulmonary function tests show that, because he did not improve with the use of a bronchodilator, he suffers from a shortness of breath through exertion. However, the court finds that the ALJ specifically noted the various findings of the claimant's treating, consultative, and reviewing physicians, including the relevant pulmonary function studies. Furthermore, the Court notes that, although the ALJ did not use the word "decrease" in describing the change, his recitation of the study and the changes reflects that he accounted for it. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("The more comprehensive the ALJ's explanation, the easier our task; but we cannot insist on technical perfection."). Having comprehensively summarized the record, the ALJ *still concluded* that the claimant could perform less than the full range of medium work. When all the evidence is taken into account, the conclusion that the claimant could perform medium work is thus supported by substantial evidence. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the

medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).

To the extent the claimant argues that the ALJ should have obtained a medical opinion to interpret the claimant's pulmonary function studies, the Court disagrees. The ALJ has "broad latitude" in deciding whether or not to order a consultative examination. *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997), *citing Diaz v. Secretary of Health & Human Services*, 898 F.2d 774, 778 (10th Cir. 1990). "When the claimant has satisfied his or her burden" of presenting evidence suggestive of a severe impairment, "then, and only then, [it] becomes the responsibility of the ALJ to order a consultative evaluation if such an examination is necessary or helpful to resolve the issue of impairment." *Id*. at 1167. Here, the ALJ specifically cited to the pulmonary function studies in relation to the claimant's larger treatment record, finding that he agreed with the state physician because "the pulmonary function studies, findings on examination, and indication that the claimant's symptoms are well-controlled by preventative treatment (as demonstrated by lack of recurrent complaint and no need for emergent treatment)" supported a need to avoid concentrated exposure to irritants within a medium RFC. This was sufficient exercise of the ALJ's broad latitude.

The essence of the claimant's appeal here is that the Court should re-weigh the evidence and determine his RFC differently from the Commissioner, which the Court simply cannot do. The ALJ specifically noted every medical record available in this case,

*and still concluded* that he could work. *See Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard*, 379 F.3d at 949. *See also Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), *citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 24th day of March, 2016.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**